*AMD
Dec 8, 2009*

JKMcD:USAO2009R00704

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

2009 DEC -8  P 4: 43

CLERK'S OFFICE
AT BALTIMORE

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. JFM-09-0639 |
| | **Conspiracy to Commit Wire Fraud** |
| JAMES WILLIAM FOX, II, | : **(18 U.S.C. 1349);** |
| JAMES HOOPER DAN, | **Wire Fraud (18 U.S.C. 1343)** |
| Defendants. | |

...oooOooo...

### INDICTMENT

The Grand Jury for the District of Maryland charges:

### COUNT ONE

1.  At times material to this Indictment, **JAMES WILLIAM FOX, II, and JAMES HOOPER DAN** were loan officers employed at a mortgage brokerage in Annapolis, MD.

2.  At times material to this Indictment, **JAMES WILLIAM FOX, II,** formed a company called Charm City Investment Group, LLC.

3.  From in and around April 2006 until in and around February 2009, in the State and District of Maryland, the Defendants

### JAMES WILLIAM FOX, II, and JAMES HOOPER DAN

did unlawfully, knowingly and willfully conspire and agree with each other and with others known and unknown to the Grand Jury, to commit offenses against the United States, that is:  to devise a scheme and artifice to defraud individuals and lenders of money and property through materially false and fraudulent statements and misrepresentations, to be executed through the use of interstate wire transfers, in violation of 18 U.S.C. 1343.

## THE CONSPIRACY AND SCHEME TO DEFRAUD

4. It was part of the conspiracy and scheme to defraud that **JAMES WILLIAM FOX, II, and JAMES HOOPER DAN** identified potential victims who were individuals in financial distress who were unable to make the mortgage loan payments on their homes and who were in foreclosure or facing the prospect of foreclosure and losing their homes.

5. It was part of the conspiracy and scheme to defraud that **JAMES WILLIAM FOX, II, and JAMES HOOPER DAN** told potential victims that they could "rescue" them from foreclosure, repair their credit, and enable them to maintain their homes.

6. It was a further part of the conspiracy and scheme to defraud that **JAMES WILLIAM FOX, II, and JAMES HOOPER DAN** obtained new mortgage loans in their own names or in the names of "straw purchasers" on the victims' homes at even higher monthly mortgage payments than the victims had originally been paying.

7. It was a further part of the conspiracy and scheme to defraud that **JAMES WILLIAM FOX, II, and JAMES HOOPER DAN** to obtain the new mortgage loans completed materially false and fraudulent loan applications for themselves or for their straw buyers including falsification of some or all of the following: intent to occupy the property, annual income, savings, other properties owned, and source of the borrower's funds for closing.

8. It was a further part of the conspiracy and scheme to defraud that **JAMES WILLIAM FOX, II, and JAMES HOOPER DAN** attended real estate settlements on these properties, which settlements were required to be conducted according to the financial terms and conditions specified by the mortgage lenders and set forth on the settlement statements (sometimes called HUD-1s), but which financial terms and conditions were not met.

2

9.  It was a further part of the conspiracy and scheme to defraud that **JAMES WILLIAM FOX, II, and JAMES HOOPER DAN** at real estate settlements failed to produce at settlement the borrowers' funds specified on the settlement statement or HUD-1;  in fact, the borrowers funds for closing were, at times, funded by the lenders' monies.

10.  It was a further part of the conspiracy and scheme to defraud that although **JAMES WILLIAM FOX, II, and JAMES HOOPER DAN** were the buyers of properties, they stripped the equity from the sellers of the properties by making material false representations to the victim sellers thereby causing the victim sellers to pay over to **FOX, DAN,** Charm City Investment Group or others what should have been the sellers' proceeds of the property sales.

11.  It was a further part of the conspiracy and scheme to defraud that **JAMES WILLIAM FOX, II, and JAMES HOOPER DAN** promised the victim sellers that they would make the mortgage payments on these properties for six months - one year, but **FOX** and **DAN** spent the mortgage proceeds and defaulted on their mortgage loans or their straw buyers defaulted on their mortgage loans.

12.  It was a further part of the conspiracy and scheme to defraud that **JAMES WILLIAM FOX, II** and **JAMES HOOPER DAN** promised the victims that the victims would continue to live in their houses and would regain ownership of their houses after a year, which the victims were unable to do.

13.  It was a further part of the conspiracy and scheme to defraud that **JAMES WILLIAM FOX, II, and JAMES HOOPER DAN** caused lenders to make over $1.7 million in fraudulent mortgage loans and caused the individual victims to lose over $650,000 in equity in their homes.

3

## OVERT ACTS

14.  In furtherance of the conspiracy and scheme to defraud and to effect its objects,

**JAMES WILLIAM FOX, II, and JAMES HOOPER DAN** committed the following overt

acts:

A.  On or about April 20, 2006, **JAMES WILLIAM FOX, II**, attended a closing to purchase

from OG  her property located in Waldorf, MD, for which purchase he signed a materially false

loan application to obtain a $267,750 loan to purchase OG's property for $315,000.

B.  On or about April 20, 2006, **JAMES WILLIAM FOX, II** received or used, through

materially false representations, OG's sellers' proceeds of over $98,000.

C.  On or about June 14, 2006, **JAMES WILLIAM FOX, II,** attended a closing to purchase

from KP his property in Glen Rock, PA, for which purchase he signed a materially false loan

application in that he did not have accounts with Legg Mason and Morgan Stanley as he

represented.

D.  On or about June 14, 2006, **JAMES WILLIAM FOX, II**, through materially false

representations, received or used sellers' proceeds of over $40,000, which were shown on the

settlement statement as paid to KP.

E.  On or about August 4, 2006, **JAMES WILLIAM FOX, II, and JAMES HOOPER DAN**

attended a settlement for **DAN** to purchase a Capitol Heights, MD property from CW for

$225,000, from which CW was to receive over $63,000.

F.  On or about August 4, 2006, **JAMES HOOPER DAN** signed a materially false loan

application that misrepresented his current employment.

G.  On or about August 4, 2006, **JAMES HOOPER DAN and JAMES WILLIAM FOX, II**, caused CW not to receive over $63,000 in sellers' proceeds.

H.  On or about August 21, 2006, **JAMES WILLIAM FOX, II,** as power of attorney for **JAMES HOOPER DAN** attended a closing for **DAN** to purchase a Hagerstown, MD property from DN for $255,000, from which DN was to receive over $65,000 in sales proceeds.

I.  On or about August 21, 2006, **JAMES HOOPER DAN** and **JAMES WILLIAM FOX, II**, caused DN to receive less than $10,000 of sales proceeds and used the remainder of the sales proceeds for their own benefit.

J.  On or about November 14, 2006, **JAMES WILLIAM FOX, II**, attended a closing with AR and TR to purchase their property in Chesterfield, VA, from which the sellers, according to the settlement statement, received over $75,000.

K.  On or about November 14, 2006, **JAMES WILLIAM FOX, II**, signed a materially false loan application in which he failed to disclose his Glen Rock, PA property and mortgage and reported a fictitious Legg Mason account as an asset.

L.  On or about November 14, 2006, **JAMES WILLIAM FOX, II**, caused the sellers to receive only $22,000 of the sales proceeds of $75,000.

M.  On or about January 5, 2007, **JAMES WILLIAM FOX, II**, attended a closing with a straw buyer he recruited, EK, to purchase a Baltimore City property from KW.

N.  On or about January 5, 2007, **JAMES WILLIAM FOX, II**, caused KW to receive $0 from the sellers proceeds of over $78,000.

O.  On or about April 5, 2007, **JAMES WILLIAM FOX, II,** and **JAMES HOOPER DAN** attended a settlement for **DAN** to purchase a Pasadena, MD property from RG.

P.  On or about April 5, 2007, **JAMES HOOPER DAN** signed a materially false loan application to borrow $301,500, to purchase the Pasadena. MD property.

Q.  On or about April 5, 2007, **JAMES HOOPER DAN** and **JAMES WILLIAM FOX, II**, caused RG not to receive the approximately $150,000 in sellers' proceeds from the Pasadena, MD property but to receive only $31,000 instead and to use the remaining proceeds for their own purposes.

R.  On or about July 5, 2007, **JAMES WILLIAM FOX, II,** attended a settlement to purchase a property in Montgomery County, Maryland from NM for $319,000.

S.  On or about July 5, 2007, **JAMES WILLIAM FOX, II**, caused NM not to receive over $51,000 of sellers proceeds.

T.  On or about July 5, 2007, **JAMES WILLIAM FOX, II,** signed a materially false loan application to obtain a mortgage loan to purchase the Montgomery County property.

18 U.S.C. 1349

## COUNTS TWO-SIX

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count One, Paragraphs 1-2 and Paragraphs 4-13, are incorporated by reference as though fully set forth herein.

2. On or about the dates set forth below in the District of Maryland, the defendants

### JAMES WILLIAM FOX, II, and JAMES HOOPER DAN

to execute the scheme and artifice to defraud and attempt to do so, did knowingly cause to be transported in interstate commerce certain signs, signals and sounds, namely wire transfers of fraudulently obtained mortgage loans as set forth in the following table:

| Count | Date | Sending Bank | Receiving Bank | Amount | Property Location |
|-------|------|--------------|----------------|--------|-------------------|
| Two | 4/20/06 | Lehman Bros FSB | Commerce First Bank | $265,092 | Waldorf, MD |
| Three | 8/4/06 | 1St Nat'l Bank of AZ | Bank of America | $179,153 | Capitol Heights, MD |
| Four | 8/21/06 | Washington Mutual Bank | Commerce First Bank | $204,000 | Hagerstown, MD |
| Five | 1/05/07 | Fremont Bank | Wachovia Bank | $165,106 | Baltimore, MD |
| Six | 7/5/07 | Banco Popular | BB&T | $287,100 | Silver Spring, MD |

18 U.S.C. 1343

7

## FORFEITURE

1. The allegations contained in Counts Two through Six are realleged and incorporated here for the purpose of alleging forfeiture.

2. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 28, United States Code, §2461(c), in the event of the defendant's conviction under Counts Two through Six of this Indictment.

3. As a result of the offenses set forth in Counts Two through Six, the defendants,

**JAMES WILLIAM FOX, II, and JAMES HOOPER DAN**

shall forfeit to the United States any and all property constituting, or derived from, proceeds obtained directly or indirectly as a result of such violations, including $2,350,000 and all interest and proceeds traceable thereto, which forfeiture amount is based on the following:

    a.    At least $ 650,000 being the amounts of equity stripped from the property in the scheme and artifice to defraud and

    b.    At least $1.7 million being the amounts of fraudulently obtained mortgage loans.

## SUBSTITUTE ASSETS

4. If any of the property described in above as being subject to forfeiture, as a result of any act or omission of the defendant,

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without

difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code § 853(p) to seek

forfeiture of any property of the defendant up to the value of any property described in sub-

paragraphs (a) through (c) above.

28 U.S.C. § 2461(c)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 1956(c)(7)
21 U.S.C. § 853(p)

**SIGNATURE REDACTED**

Foreperson

*Rod J. Rosenstein*
Rod J. Rosenstein
United States Attorney

12-8-09
Date

9